Richard M. Kremen (DC Bar No. 195073)
Dale K. Cathell (*pro hac vice* application forthcoming)
**DLA PIPER LLP (US)**
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone:    (410) 580-3000
Facsimile:    (410) 580-3001
Email: richard.kremen@us.dlapiper.com
         dale.cathell@us.dlapiper.com

*Counsel for IOF III Trust 1B*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 22-00126 |
| 1225 Clifton ST DE LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |

### MOTION OF IOF III TRUST 1B TO DISMISS BANKRUPTCY CASE

Pursuant to 11 U.S.C. § 1112(b) and Rule 9014 of the Federal Rules of Bankruptcy Procedure, IOF III Trust 1B, as successor by assignments by Verus Commercial Real Estate Finance, LLC and Verus Mortgage Trust 1A to IOF III Trust 1B (collectively the "Secured Lender"), by its undersigned counsel, hereby moves to dismiss the bankruptcy case of 1225 Clifton ST DE LLC (the "Debtor"). In support of its motion, the Secured Lender states as follows:

### INTRODUCTION

1. The Debtor's bankruptcy case has all the indicia of a bad faith bankruptcy filing:

(i) the Debtor is a single asset real estate entity;

(ii) the Debtor's sole asset is an apartment complex situate at 1225 Clifton Street, NW, Washington, D.C. (the "Property") that is encumbered by the Secured Lender's lien;

(iii) the Debtor has no employees;

(iv) the Debtor has little or no cash;

(v) the Debtor lacks sufficient sources of income to effectuate a confirmed plan of reorganization;

(vi) the Debtor and its principal, Azam Mirza ("Mr. Mirza" or "Guarantor"), have engaged in blatant improper acts in connection with procuring the loan made by Secured Lender and their compliance with the obligations under the Loan Documents (as defined below);

(vii) the Debtor's only creditor is the Secured Lender; and

(viii) the Debtor filed this bankruptcy case only two hours before a scheduled foreclosure sale for the sole purpose of staying the sale.

2. As evidenced by the record in this case, the Debtor has no viable business and no realistic possibility of an effective reorganization. The case was filed in bad faith to solely stay Secured Lender's foreclosure action. The Debtor's pursuit of the case is objectively futile. The only party who hopes to benefit from this filing is Mr. Mirza, Debtor's principal, who has engaged in misconduct in connection with this Loan. This case is a textbook example of a two-party dispute that appears to have only one purpose: to delay the foreclosure of the Property that was properly noticed under District of Columbia law. This Court should not condone this abuse of the

bankruptcy process. Given the circumstances, cause exists for the immediate dismissal of this case.

## JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1112.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

### The Loan

6. On December 9, 2021, Verus Commercial Real Estate Finance, LLC ("Verus") extended a $6,270,000.00 loan to the Debtor (the "Loan") to fund the refinancing of a nineteen-unit apartment complex located at 1225 Clifton Street, NW, Washington, DC 20009 (the "Property"). The Property is a Section 8 apartment building and is backstopped by funding by the District of Columbia Housing Authority Housing Choice Voucher Program that generates approximately $60,000 per month in rental proceeds.

7. The Loan is evidenced by a Loan Agreement dated December 9, 2021 (the "Loan Agreement") and a Promissory Note of even date (the "Note"). A true and complete copy of the Loan Agreement is attached hereto as **Exhibit 1**, and a true and complete copy of the Note is attached hereto as **Exhibit 2**.

8. Repayment of the Loan is secured by a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 9, 2021 encumbering the Property (the "Deed of Trust"). A true and complete copy of the Deed of Trust, which is recorded among the

-3-

land records of the District of Columbia as Instrument No. 2021169186, is attached hereto as **Exhibit 3**.

9. Pursuant to a Guaranty dated December 9, 2021 (the "Guaranty"), Mr. Mirza, the ultimate owner of the Debtor, has guaranteed this loan, subject to certain conditions. A true and complete copy of the Guaranty is attached hereto as **Exhibit 4**.

10. The Loan Agreement, the Note, the Deed of Trust, and the Guaranty, together with all other documents executed to evidence, secure, guarantee or in connection with the Loan, as the same may from time to time be modified, extended, renewed or restated, are hereinafter collectively referred to as the "Loan Documents."

11. Subsequently, the Loan was assigned to the Secured Lender who is now the current holder of the Loan and Loan Documents. (Copies of the assignment documents to Secured Lender are attached hereto as **Exhibit 5**.)

**Defaults on the Loan**

12. The Debtor has defaulted on its obligations from the inception of the funding of this Loan.

13. The Loan closed on December 9, 2021. Under the terms of the Loan Agreement, monthly interest payments were to commence on January 9, 2022 and continue on the ninth day of each month thereafter. *See* Loan Agreement at § 2.4. Debtor made only one interest payment even though, based on Debtor's representations made in connection with the closing of the loan, the Debtor is receiving approximately $60,000 per month from the District of Columbia's Housing Authority Housing Choice Voucher Program. It appears that the Debtor and Guarantor have used these rental proceeds for matters other than debt service even though these rental proceeds are

clearly pledged to Secured Lender. Secured Lender attempted to reach Mr. Mirza multiple times, by telephone, electronic mail and via his attorney, in an effort to determine why, notwithstanding the Debtor's receipt of cash from the District of Columbia, the Debtor was not making any principal or interest payments on account of the Loan. Secured Lender's counsel also contacted the attorney who represented the Debtor at closing, and that attorney said he had no contact with Mr. Mirza. Mr. Mirza has not responded to any of Secured Lender's inquiries.

14. Secured Lender believes that the Debtor has also defaulted on its obligation to maintain insurance coverage for the Property. Unbeknownst to Secured Lender, the Debtor apparently received notification from its insurance carrier that because of concerns over certain fire risks to the Property created by the existing Federal Pacific electric panels, insurance coverage on the Property was cancelled. The premium on this policy (on information and belief, approximately $18,500) was apparently subsequently returned to Debtor, and Secured Lender had no knowledge of the refund. Secured Lender also believes that Debtor has taken no steps to repair or replace these electric panels – even though the Property is fully leased and occupied.

15. Upon information and belief, Secured Lender also believes that the Debtor and Mr. Mirza made material misrepresentations in obtaining this Loan. For example, Secured Lender believes the Property Management Agreement signed at closing is false. The Property Management Agreement signed at closing states that the Property is to be managed by Rose Knox. Secured Lender reached "Rose Knox," who disavowed any knowledge of the Property and denied that she executed a confirmation of collateral assignment of the Property Management Agreement. Moreover, despite repeated requests, Debtor's counsel has been unable to confirm who, if anyone,

is currently managing the Property.  As of the date of this filing, the Debtor also has failed to file its Schedule G as part of its bankruptcy filing.

16. Upon information and belief, Secured Lender also believes that the Debtor's and Guarantor's representations as to ownership of assets submitted as part of its loan application may be false.  The Debtor/Guarantor provided Secured Lender with a list of four other parcels of real estate that they asserted they owned and/or managed in the District of Columbia.  Based on the records obtained from the Office of Tax and Revenue website and the online records of the Recorder of Deeds, it does not appear that the Debtor/Guarantor owned any of these parcels at the time of closing of this Loan on December 9, 2021 and the Secured Lender has been unable to obtain any information suggesting that the Debtor/Guarantor managed these properties.

17. Based on Debtor's defaults under the Loan and numerous unsuccessful efforts to reach Debtor/Guarantor to find out why Loan payments were not being made, on April 29, 2022, Secured Lender accelerated the Loan.  A foreclosure sale was scheduled in the District of Columbia for July 21, 2022, at 11:30AM.

18. As of the bankruptcy filing, the total amount of indebtedness owed to the Secured Lender was $7,063,130.17.

**The Bankruptcy Proceedings**

19. On July 21, 2022, before the foreclosure sale could be completed, the Debtor filed its bankruptcy petition.  [ECF No. 1].  Along with its petition, the Debtor filed certain of its bankruptcy schedules (the "Schedules").[1]

---

[1] The Debtor failed to include Schedule G and its Statement of Financial Affairs with its bankruptcy petition.

20. On Schedule A/B, the Debtor scheduled a fee simple interest in the Property and valued the Property at $8,000,000. *Id.*

21. On Schedule D, the Debtor listed the Secured Lender as having a first-priority claim worth $6,270,000 secured by the Property. *Id.* Additionally, on Schedule D, this claim is not listed as contingent or disputed and the Debtor listed no other secured creditors. The Debtor listed no unsecured creditors on Schedule E/F. *Id.*

22. According to the Debtor's Schedules, the Property is the Debtor's only substantial asset. The Secured Lender's secured claim is the only claim that the Debtor has scheduled. The Debtor does not have any employees. The Debtor claims to only have $50.00 in cash, even though Debtor previously advised Secured Lender that Debtor received substantial monthly payments (*i.e.*, approximately $60,000) from the District of Columbia's Housing Authority Housing Choice Voucher Program. The Debtor does not have any available sources of income to sustain a plan of reorganization or to make adequate protection payments. According to its own admission, the Debtor only has one creditor: the Secured Lender.

23. On its bankruptcy petition, the Debtor stated that it is a single asset real estate debtor pursuant to Section 101(51)(B) of the Bankruptcy Code. *See* ECF No. 1, pg. 2.

## ARGUMENT

### A. Legal Standard

24. Section 1112(b) of the Bankruptcy Code allows the Court broad discretion to dismiss a case for cause. Although Section 1112 does not explicitly require that an action be filed in "good faith," courts regularly hold that lack of good faith in the filing of a bankruptcy petition

is grounds for dismissal. *In re Franklin Mortg. & Inv. Co.*, 143 B.R. 295, 299 (Bankr. D.D.C. 1992).

25. To determine whether cause exists to dismiss a case for being filed in bad faith, courts may consider different factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions, or, in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Phoenix Piccadilly, Ltd*. 849 F.2d 1393, 1394 (11th Cir. 1988). In the D.C. Circuit, courts have reviewed the following factors in determining that a bankruptcy petition was filed in bad faith and should be dismissed:

(1) The debtor has one asset, such as a tract of undeveloped or developed real property.
(2) The secured creditors' liens encumber this tract.
(3) There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or make adequate protection payments. . . .
(4) Typically, there are only a few, if any, unsecured creditors whose claims are relatively small.
(5) The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation. . . .
(6) Bankruptcy offers the only possibility of forestalling loss of the property.
(7) There are sometimes allegations of wrongdoing by the debtor or its principals.
(8) The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies . . . bad faith cases.

*See Franklin Mortg. Inv. Co., Inc.*, 143 B.R. at 299-300. "Two-party disputes (where the two sides are a single creditor on one side and the debtor, its management and owners on the other) are not

-8-

appropriate vehicles for invoking the Bankruptcy Code's chapter 11 provisions." *In re North Vermont Associates, L.P.*, 165 B.R. 340, 343 (Bankr. D.D.C. 1994).

### B. The Debtor's bankruptcy petition should be dismissed because the Debtor filed this bankruptcy petition in bad faith.

26. The good faith standard "'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with clean hands.'" *In re Premier Automotive Services, Inc.*, 492 F.3d 274, 279 (4th Cir. 2007). "Subjective bad faith is shown where a petition is filed 'to abuse the reorganization process,' or 'to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay.'" *Premier*, 492 F.3d at 280 (quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 702 (4th Cir. 1989)).

27. This is precisely what happened here. The Debtor did not file its bankruptcy case to reorganize its financial affairs. To the contrary, the Debtor's motive in filing the case was to invoke the automatic stay to forestall the foreclosure proceedings and delay the Secured Lender's efforts to exercise its remedies. In conducting a "totality of the circumstances" inquiry, it is clear that the Debtor's Chapter 11 case was filed in bad faith.

28. *First*, the Debtor has a single asset, the Property. The bankruptcy case is a single asset real estate case as defined in 11 U.S.C. § 101(51B). *See* ECF No. 1, page 2 (identifying the Debtor as a single asset real estate debtor), Schedule A (listing only the Property) and Schedule B (listing only $50.00 of personal property). The Debtor admits that the Property is encumbered by the Deed of Trust for the benefit of the Secured Lender. *See* ECF No. 1, Schedule D.

29. *Second*, the Debtor, as a single member LLC, does not have any employees and lacks the resources to sustain a Reorganization Plan or make adequate protection payments. The Debtor must make monthly installment payments in order to adequately protect the Secured Lender's interest in the Property. Moreover, the Debtor previously advised the Secured Lender that it has been receiving $60,000 per month from the District of Columbia's Housing Authority Housing Choice Voucher Program. The Debtor failed to disclose this information in its Schedules and has further failed to use any of these apparent funds to make its required payments under the Loan Agreement. In fact, the Debtor's Schedules reflect that the Debtor does not generate any income.

30. *Third*, the Secured Lender is the Debtor's only creditor. The Debtor's Schedule F shows no general unsecured creditors. *See* ECF No. 1, Schedule E/F.

31. *Fourth*, the Property was set for foreclosure and scheduled to be sold less than two hours after the Debtor filed for bankruptcy. This bankruptcy filing offers the only possibility of forestalling loss of the property as the Debtor's operations appear to lack an income stream with which to make adequate protection or interest payments to the Secured Lender. The Debtor is bound to default on their post-petition obligations, only delaying the inevitable consummation of the foreclosure on the Property.

32. *Fifth*, there is significant evidence of wrongdoing by the Debtor. As indicated above, the Debtor has failed to maintain insurance on the Property. Its loan application documentation appears to include false information. It has identified Rose Knox as a management company that apparently is not, and has never, managed the Property. It has failed to repair the electrical panels at the Property – the proximate cause of the cancellation of its insurance. Finally,

it appears that the information it provided to the Secured Lender in connection with its loan application and other purported real estate assets was also incorrect.

33. *Finally*, this filing is a textbook example of a two-party dispute that belongs outside of a bankruptcy court. Courts have frequently held that bankruptcy should not be used as a forum to resolve two-party disputes. *In re North Vermont Associates, L.P.*, 165 B.R. at 343; *see also In re 15375 Meml. Corp. v. Bepco, L.P.*, 589 F.3d 605, 625 (3d Cir. 2009) (Where "the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith"). Here, the Secured Lender is the Debtor's only creditor. The Debtor did not file its Chapter 11 case with any legitimate desire to reorganize; instead, it filed solely as a tactical maneuver to stay the foreclosure proceedings and shop for a more sympathetic forum to litigate with its only creditor. Given the totality of the circumstances here, this Court should dismiss this Chapter 11 Case for cause and not condone the Debtor's abuse of the bankruptcy process.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein and for other reasons that may be presented at any hearing on this motion, IOF III Trust 1B requests that the Court:

(a) dismiss the Debtor's bankruptcy case for "cause" pursuant to 11 U.S.C. § 1112(b); and

(b) grant such other and further relief as is just and appropriate under the circumstances.

DATE: August 2, 2022

Respectfully submitted,

*/s/ Richard M. Kremen*
Richard M. Kremen (DC Bar No. 195073)
Dale K. Cathell (*pro hac vice* application forthcoming)
DLA PIPER LLP (US)
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland 21209
Tel:  (410) 580-3000
Fax:  (410) 580-3001
Email: richard.kremen@us.dlapiper.com
Email: dale.cathell@us.dlapiper.com

*Counsel for IOF III Trust 1B*